affairs, even if it were used but as a tool, have been wound up, and the proceeds of this business operation by the corporation have been turned back, and at some time were in the hands of Shaffer, who has entirely failed to explain what became of these proceeds.

Under these circumstances it must be held that the assets of the bankrupt firm were, at the time the corporation was formed, liable for the debts of the bankrupt firm, and, even if exchanged for stock in the new corporation, were thereby freed from further liability, only in the hands of an innocent purchaser for value, which the corporation might be, if honestly conducted.

Not only did the stock of the corporation issued to Shaffer become liable for his debts, but, if he in fact used the corporation in such a way that it was not in the position of an innocent holder for value, but was merely a party to the fraud, and an intermediary through which Shaffer obtained the proceeds of liquidation from the stock of goods which should have gone to the creditors of Shaffer & Stern, Shaffer should then be held liable for what has been traced into his hands out of the corporation's funds. Even the fact that the stockholders of the corporation may have been cheated by him out of the proceeds of their own investment would not affect the present situation; for the corporation's debts were paid, equaling in value the amount which the new stockholders put in, and they have no equities, as against the creditors of Shaffer & Stern, superior to the rights of those creditors.

The order of the referee related only to the large checks and items which were specifically traced into the hands of Shaffer, and as to those items the responsibility is certainly upon him to pay over the amount of these checks, or to show what became of them, and what he did with his own individual assets subsequent to the proposed settlement with his creditors, which has been above referred to.

The report will be confirmed.

---

## In re ROY.

(District Court, W. D. New York. December 7, 1910.)

No. 3,697.

ACKNOWLEDGMENT (§ 16*)—BANKRUPTCY—POWERS OF ATTORNEY — OFFICER— JUSTICES OF THE PEACE.

Bankr. Act July 1, 1898, c. 541, § 20, 30 Stat. 551 (U. S. Comp. St. 1901, p. 3430), provides that oaths required by the act, except on hearing in court, may be administered by referees and by officers authorized to administer oaths and in proceedings before the courts of the United States or under the laws of the state where the same are to be taken. Gen. Bankr. Order 21, subd. 5, declares that the execution of any letter of attorney to represent a creditor may be approved or acknowledged before a referee or a United States commissioner or notary public. *Held*, that subdivision 5 was not exclusive, and did not prevent justices of the peace, authorized by state law to take acknowledgment, from validly taking a creditor's acknowledgment to letters of attorney to be used in the selection of a trustee.

[Ed. Note.—For other cases, see Acknowledgment, Dec. Dig. § 16.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the matter of bankruptcy proceedings against John H. Roy. On petition to review a referee's determination as to the validity of an election of trustee. Reversed, and new election ordered.

George P. Keating, for petitioners on review.
Earle S: Warner, for trustee.

HAZEL, District Judge. The authorities cited by counsel for the petitioners (In re Butterfield, Fed. Cas. No. 2,248, and In re McDuffee, Fed. Cas. No. 8,778) were not called to my attention on the original hearing, nor was any suggestion made that a similar question had been considered under the bankrupt act of 1867. Act March 2, 1867, c. 176, 14 Stat. 517. These authorities show that the power given by section 20 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 551 [U. S. Comp. St. 1901, p. 3430]) "to * * * officers authorized to administer oaths in proceedings before the courts of the United States, or under the laws of the state where the same are to be taken," carries with it the incidental power to take acknowledgments of letters of attorney. Such decisions are in conflict with my former decision herein that the Supreme Court, by General Order 21, subd. 5 (89 Fed. x, 32 C. C. A. xxiii), intended to limit the officers before whom letters of attorney might be acknowledged.

After carefully considering the decision of Judge Brown in Re Butterfield, supra, I am persuaded that it is well reasoned and should have controlled the question certified in this case. Under the act of 1867, there was no requirement that powers of attorney should be acknowledged; but the amendment of 1874 (Act June 22, 1874, c. 390, § 20, 18 Stat. 186) provided that a notary public should be empowered to take proof of claims against the bankrupt estate. General Order 34, then in force, provided for proving or acknowledging claims before a register or United States commissioner, and such rule was not changed or altered after the amendment. In this situation the question arose in the Butterfield Case whether letters of attorney to represent creditors might be acknowledged before a notary public. The learned court was of opinion that the general order ought to be interpreted so as to carry into effect the true intent and object of the Legislature in enacting the bankruptcy law, and upon the subject of whether the power to take oaths includes the power to take acknowledgments said:

"I place my decision upon the ground that the power given to notaries public to take proofs of debt, in view of the usual course of proceedings in these cases, carries with it as an incident the power to authenticate letters of attorney. I am authorized to say that the Circuit Judge concurs with me in this opinion."

And again:

"The amendment was intended to obviate the necessity of a creditor traveling perhaps a great distance to the nearest commissioner or register to prove a debt; but if he is compelled to make the same journey after having proved his debt, to acknowledge a letter of attorney, for all practical purposes the act might as well have never been passed."

This reasoning would seem to apply to the case at bar, and its soundness cannot be ignored by me. The ruling was subsequently ap-

proved and followed in Re McDuffee, supra. These adjudications constrain me to hold that in states where justices of the peace are expressly authorized to take oaths the Supreme Court did not intend by General Order 21, subd. 5, to exclude such officials from taking acknowledgments.

The election of George W. Salisbury as trustee must be vacated and set aside, and another election of trustee held under the direction of the referee, at which election letters of attorney of creditors acknowledged before justices of the peace and otherwise regular shall be received, and the proxies allowed to vote.

So ordered.

---

UNITED STATES ex rel. BIRNBAUM v. HENKEL, U. S. Marshal.

(Circuit Court, S. D. New York. March 8, 1911.)

1. HABEAS CORPUS (§ 92*)—SCOPE OF WRIT—REVIEW.
    Where relator was committed for contempt in disobeying an order of a referee in bankruptcy, habeas corpus was only available to review the validity of the commitment, and not the order.
    [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 87–95; Dec. Dig. § 92;* Contempt, Cent. Dig. § 219.]

2. HABEAS CORPUS (§ 27*)—ORDERS OF REFEREE — DISOBEDIENCE — REVIEW— CERTIFICATION.
    Under Bankr. Act July 1, 1898, c. 541, § 41b, 30 Stat. 556 (U. S. Comp. St. 1901, p. 3437), providing that the referee shall certify the facts to the judge if any person shall do any of the things prohibited by the section, and that the judge shall thereupon in summary manner hear the evidence as to the acts complained of, and, if it is such as to warrant him in so doing, punish the person in the same manner and to the same extent as for contempt committed before the court of bankruptcy, the referee's failure to certify disobedience of a proper order to the court for action, while an irregularity, was not a jurisdictional defect in proceedings to punish the person guilty of such disobedience as for contempt, so as to subject the commitment to collateral attack by habeas corpus.
    [Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 22; Dec. Dig. § 27.*]

Habeas corpus by the United States, on the relation of Jacob Birnbaum, to obtain relator's release from the custody of William Henkel, United States Marshal for the Southern District of New York. Writ dismissed.

Louis Sanders, for petitioner.
Henry A. Wise, U. S. Atty., for respondent.

HAND, District Judge. The order committing the relator for contempt in this case was made upon the return of an order to show cause issued by the District Judge and duly served upon the relator. The order which the relator disobeyed was the order of a referee in bankruptcy, and the referee had not certified to the District Court the disobedience of the relator. The order of commitment was therefore irregular, under section 41b of the bankruptcy law, which provides as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes